UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00409-MR

| DAYSHAWN BECKHAM, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | ORDER |
|  | ) |  |
| FNU PETTERSON, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [Doc. 16] and Motion to Strike Surreply [Doc. 25] and several motions by Plaintiff [Docs. 14, 15, 19, 21, 22, 26, 29, 30, 34].

## I. BACKGROUND

Pro se Plaintiff Dayshawn Beckham ("Plaintiff") is a pre-trial detainee currently housed at Central Prison in Raleigh, North Carolina. On August 16, 2022, he filed this action pursuant to 42 U.S.C. § 1983 against Defendants FNU Petterson and FNU Philip, both identified as Direct Action Response Team (DART) officers employed by the Mecklenburg County Sheriff's Office. [Doc. 1 at 2]. Plaintiff alleged that, on June 2, 2022, while detained at the Mecklenburg County Jail, Defendants beat him while his hands were restrained behind his back. [Id. at 5]. Plaintiff claims that this

conduct violated his right to be free from excessive force and cruel and unusual punishment. [Id. at 3]. In his Complaint, Plaintiff acknowledged that the Jail has a grievance procedure. [Id. at 6]. He alleged, however, that the Jail grievance procedure did not "cover some or all of [his] claims." [Id.]. He explained that "[t]he grievance is only in house by kiosk and does no support and lawsuit claims they told me to let my lawyer know because that can't do that." [Id.]. Plaintiff also alleged, however, that he filed grievances at Central Prison and Mecklenburg County Jail. [Id. at 7]. Plaintiff further alleged that, as of filing his Complaint, Central Prison had not responded to his grievance and that "Mecklenburg County Jail said they don't handle those type of matters and [to] tell [his] lawyer" and "never started the process." [Id.]. On August 31, 2022, Plaintiff prepared his verified Administrative Remedies Statement in which he attests that he had exhausted his administrative remedies. [See Doc. 6]. On October 4, 2022, Plaintiff's Fourteenth Amendment excessive force claim against Defendants passed initial review. [Doc. 10].

Defendants now move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment. [Doc. 16]. Defendants argue that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA),

42 U.S.C. § 1997e(a), before filing this action. [Doc. 17]. With their motion, Defendants provided copies of two grievances submitted by Plaintiff through the Jail Kiosk on June 8, 2022, six days after the alleged incident. [Doc. 17-15]. In one grievance, Plaintiff requests access to certain books in a series he was reading and, in the other, Plaintiff requests assistance contacting his lawyer. Neither grievance references the incident that is the subject of the Complaint. [See id.].

On November 14, 2022, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and cautioning him that his failure to respond would likely result in Defendants being granted dismissal of Plaintiff's Complaint. [Doc. 18]. In response, Plaintiff claimed he had not been served with a copy of the motion to dismiss and asked the Court "to stay it's [*sic*] order" on the motion. [Doc. 19]. Plaintiff also generally reasserted his claim and stated that he "heavily opposed" Defendants' motion. [Doc. 20].

Then, on or around November 28, 2022, after presumably receiving Defendants' motion to dismiss, Plaintiff filed a "Rebuttal" to the motion. [Doc. 24; see Doc. 24 at 4, Doc. 24-2]. In this filing, Plaintiff claims for the first time that he was not allowed out of his cell for eight days "proceeding the

3

incident"[1] before being moved to Central Prison. [Id. at 1]. Plaintiff states during this time he suffered from severe physical injuries "that caused him great pain and cognitive impairment," making him "unable to formulate a proper complaint." [Id. at 1-2]. Plaintiff also claims that he had another inmate log into the Jail Kiosk under his name to submit the two grievances presented by Defendants and that Plaintiff "did not have proper access to [the] administrative remedy process before being moved to Central Prison." [Id. at 2]. Plaintiff states that, once at Central Prison, he filed a grievance through NCDPS procedure. [Id.]. Finally, Plaintiff claims that the Jail "denied [him] access to the koiask [*sic*] before moving him" … "through no fault[ ] of his own." [Id. at 3]. Defendants moved to strike Plaintiff's Docket No. 24, arguing it is an unauthorized surreply violative of Local Rule 7.1(e). [Doc. 25]. Plaintiff has since submitted a copy of the NCDPS grievance, which appears to have been filed on or around June 15, 2022. [Docs. 26, 27]. In it, Plaintiff wrote:

> I was in my cell when Dart Officer Philips told me to come to the door to take handcuffs off with the door open I said ok he took one handcuff off and spit in my face and struck me with his fist then Dart Officer Petterson helped him attack me I did not fight back I let them cuff me behind my back while they beat me.

---

[1] It appears Plaintiff misunderstand the meaning of the term "proceeding." The Court assumes that Plaintiff is referring to the eight days following the incident.

4

[Doc. 27 at 2 (errors uncorrected)]. Most recently, Plaintiff "move[d] to grant relief in this civil action because [Defendants'] only argument is that [he] failed to exhaust [his] administrative remedies which in fact [he] did not."[2] [Docs. 29; see Docs. 30, 34].

The matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule

---

[2] Plaintiff's other pending motions include premature and/or improper motions to compel discovery, for default judgment, and to subpoena medical records and other discovery materials. [See Docs. 14, 15, 21, 22]. These motions will not be further addressed by the Court and will be denied. Plaintiff is strongly admonished against filing further improper, duplicative, premature, and/or frivolous motions with this Court.

5

12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, see Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants here move to dismiss Plaintiff's Complaint under Rule 12(b)(6) and, alternatively, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). On a motion to dismiss, however, the Court may consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013).

## III. DISCUSSION

The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that

7

unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Id. at 216. A prisoner, however, need only exhaust those remedies actually available to him. Ross v. Blake, 136 S.Ct. 1850, 1855-56 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiff, however, must adduce facts showing that he was prevented from accessing the procedure. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011).

Finally, it is well-settled that a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action; rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

In support of their motion to dismiss, Defendants have shown the following. The Mecklenburg County Sheriff's Office maintains a written

8

Case 3:22-cv-00409-MR   Document 37   Filed 03/01/23   Page 8 of 13

grievance policy, CP 6.06 ("Grievance Policy"), which was effective during Plaintiff's confinement. [Doc. 17-2 at ¶ 2: Ashe Dec.]. Inmates are informed of the Jail Grievance Policy through the Kiosk when they arrive at the Jail. Each inmate receives an Inmate Handbook through the Kiosk, which includes an explanation of the grievance process. [Id. at ¶ 4].

Pursuant to the Grievance Policy, an inmate may attempt informal resolution of his grievance through complaint to the POD Supervisor. The POD Supervisor determines the nature of the complaint and attempts to resolve the problem. If the POD Supervisor is unable to resolve the grievance informally, the inmate will be instructed and allowed to make a formal complaint using the RMA Kiosk in each housing unit. [Doc. 17-3 at 3; Doc. 17-2 at ¶ 3]. All grievances are answered within seven days, excluding weekends and holidays. Once entered, grievance responses are immediately available to inmates through the Kiosk. When an inquiry or investigation was conducted relative to a complaint, the Grievance Supervisor indicates "Corrective Action Initiated." Each grievance is flagged as "In Favor" or "Not in Favor." An inmate may appeal the initial formal grievance response through the Kiosk within 72 hours, excluding weekends and holidays. The appeal is forwarded to the proper authority for final resolution. [Id. at 4-5; Doc. 17-2 at ¶ 3].

Defendants here have submitted copies of the only two grievances submitted by Plaintiff while he was detained at the Jail, as provided by Carolyn Ashe, the Mecklenburg County Sheriff's Office Inmate Grievance Coordinator. [Docs. 17-2, 17-5; see also Doc. 17-2 at ¶¶ 5-6: Ashe Dec. (attesting to her job duties in maintaining inmate request and grievance forms and her complete review of relevant grievance records)]. Ashe attests that these grievances were the only ones filed by Plaintiff while he was incarcerated at the Jail from June 2, 2022 to the present. [Doc. 17-2 at ¶ 5[3]]. These two grievances include a request for certain books from the library and to unblock the phone number for Plaintiff's lawyer "so [Plaintiff] can talk to him." [Doc. 17-5].

Plaintiff, on the other hand, has shown the following relative to exhaustion. In his unverified Complaint, he alleged that the Jail's grievance procedure did not cover his claim and that "they" told him to let his lawyer know about it. Plaintiff also alleged, however, that he filed grievances at the Jail and Central Prison, but that the Jail "never started the process." In response to Defendants' motion to dismiss, Plaintiff claimed for the first time

---

[3] Ms. Ashe avers that Plaintiff has been incarcerated at the Jail "until the present," presumably meaning the date of her Declaration, November 8, 2022. [Doc. 17-2 at ¶ 5]. It does not appear to be disputed, however, that Plaintiff has been housed at Central Prison since on or about June 15, 2022. [Docs. 26, 27].

that he was not allowed out of his cell for eight days after the incident and was prevented from "formulat[ing] a proper complaint" due to his severe physical injuries and cognitive impairment. Plaintiff also explains that he had another inmate log into the Kiosk and file the two grievances presented by Defendants. Plaintiff did not address whether the attempt to contact his lawyer through the Kiosk related to the events at issue.

Under the PLRA, an administrative remedy is available when it is "capable of use for the accomplishment of a purpose" and "accessible or may be obtained." Ross, 136 S.Ct. at 1858. A plaintiff must show that administrative remedies were not available. Graham, 413 Fed. App'x at 663. The Court, however, need not accept conclusory factual allegations devoid of any reference to actual events. Hirst, 604 F.2d at 847. Here, Plaintiff claims that he did not exhaust his administrative remedies because he was prevented from leaving his cell for eight days following the incident and that he was physically and cognitively unable to submit a proper complaint. Although these claims may conflict somewhat with Plaintiff's other assertions regarding exhaustion, Plaintiff has adduced enough at this stage of the proceedings to support the unavailability of administrative remedies before

he was transferred to Central Prison.[4] The Court declines to find facts from the evidence before it. The Court, therefore, will deny Defendants' motion to dismiss.

Plaintiff is strongly admonished against filing further improper, duplicative, premature, and/or frivolous motions with this Court. [See Docs. 14, 15, 19, 21, 22, 26, 29, 30, 34]. Plaintiff is strongly encouraged to review the Order of Instructions [Doc. 3], the Federal Rules of Civil Procedure, and the Local Rules of this Court before he files any further documents in this case. Failure to abide the Court's instructions and these Rules may result in dismissal of this action.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court will deny Defendants' motion to dismiss.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss [Doc. 16] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Surreply [Doc. 25] is **DENIED** in accordance with the terms of this Order.

---

[4] The Court notes that Plaintiff's belated grievance once in NCDPS custody is insufficient where it appears such grievance was pending at the time Plaintiff filed this action. See Woodford, 548 U.S. at 83-84 (filing an untimely or otherwise procedurally defective grievance or appeal is insufficient; proper exhaustion is required).

**IT IS FURTHER ORDERED** that Plaintiff's Motions [Doc. 14, 15, 19, 21, 22, 26, 29, 30, and 34] are **DENIED** in accordance with the terms of this Order.

**IT IS SO ORDERED**.

Martin Reidinger
Chief United States District Judge